In the Matter of **ALLPOINTS WAREHOUSING IN LIQUIDATION, INC.,** a Delaware corporation, Debtor.

**Jeoffrey L. Burtch, Chapter 7 Trustee, Plaintiff,**

v.

**Gerald Wendel, a/k/a Jerry Wenden; Stuart Lichter; Barry Lang; and Thomas Bopp, the aforesaid parties being individuals; the MBJR Trust; and Quadrelle Realty Services, a division of Quadrelle Group, Inc., a New York corporation, and Wilentz, Goldman & Spitzer, P.C., Defendants.**

Bankruptcy No. 94–692.
No. CIV. A. 00–217–SLR.

United States District Court,
D. Delaware.

March 13, 2001.

Gregory J. Weinig, and Jeoffrey L. Burtch, of Cooch and Taylor, Wilmington, Delaware, for the Trustee.

Daniel Kinburn, of Dwyer, Kinburn, Hall & Golub, Totowa, New Jersey, Special Counsel to the Trustee.

Daniel R. Rath, Eric Lopez Schnabel, and Rebecca L. Butcher, of Klett Rooney Lieber & Schorling, Wilmington, Delaware, for the Allpoints Defendants and Quadrelle Defendants.

Barry M. Klayman, of Wolf, Block, Schorr and Solis–Cohen, Wilmington, Delaware, for defendants Wilentz, Goldman & Spitzer, P.C.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

The instant lawsuit was initiated on December 4, 1998 by plaintiff Jeoffry L. Burtch as Chapter 7 Trustee for debtor Allpoints Warehousing in Liquidation, Inc. ("debtor"). Pursuant to 11 U.S.C. § 541, plaintiff trustee has filed a complaint asserting state law causes of action purportedly belonging to debtor as of the petition date of July 20, 1994 against various defendants. The first group of defendants includes the sole stockholders and directors

of debtor and its corporate predecessor, Allpoints Distribution Services, Inc., a Delaware corporation ("Allpoints"). These defendants, referred to hereafter as the "Allpoints Defendants," include Gerald Wendel, Stuart Lichter, Barry Lang and the MBJR Trust. The second group of defendants, the "Quadrelle Defendants," includes Quadrelle Realty Services, Inc., a division of Quadrelle Group, Inc., and Thomas Bopp, the president of Quadrelle Group, Inc. The Quadrelle Defendants were sued in their capacities as agents of the debtor. The final defendant, Wilentz, Goldman & Spitzer, P.C. ("Wilentz"), was sued in its capacity as counsel to, *inter alia*, debtor.[1]

Plaintiff initiated this lawsuit as an adversary proceeding in the United States Bankruptcy Court for the District of Delaware. The case was removed to this court by order dated March 24, 2000. This court has jurisdiction over the proceeding pursuant to 28 U.S.C. § 1334. Pending before the court are various motions for summary judgment filed by the defendants. For the reasons that follow, all such motions shall be granted.

## II. BACKGROUND

The critical facts are essentially undisputed. Prior to 1988, Allpoints was a wholly-owned subsidiary of Continental Can Company, Inc. ("Continental").[2] During the 1980's, Allpoints' business included the operation of nine public warehouses located in Florida, California, New Jersey, Wisconsin, Illinois and Texas. In addition, Allpoints was a party to a lease and sublease in Paterson, New Jersey ("the Paterson Lease"). The lease obligation to the landlord of the Paterson Lease was guaranteed by Continental.

In 1988, the Allpoints Defendants formed a corporation known as Warehouse America Acquisition Co., Inc. ("WAAC"), a Delaware corporation, for the purpose of purchasing the stock of Allpoints from Continental. On March 31, 1988, Continental and WAAC entered into a Stock Purchase Agreement whereby WAAC acquired all of the stock and assets of Allpoints from Continental. In 1989, WAAC was dissolved and the stock of Allpoints formerly owned by WAAC was transferred to the Allpoints Defendants, who remained at all relevant times the sole shareholders, directors and officers of Allpoints. Allpoints continued to conduct its warehousing business and hold the Paterson Lease.

By an Assignment of Lease effective March 1, 1990, the Allpoints Defendants assigned the Paterson Lease to Place for Space, Inc. ("Place"), an Ohio corporation owned and controlled by the Allpoints Defendants. Place retained the Quadrelle Defendants to administer the accounting functions associated with said lease. By a Purchase and Sale Agreement dated March 9, 1990, the Allpoints Defendants sold Allpoints' operational assets to a Michigan corporation owned by Zorn.

Subsequent to the above transactions ("the 1990 Transactions"), Allpoints ceased to have any operations or possess any assets. The Allpoints Defendants proceeded to legally change the name of Allpoints to that of the debtor—Allpoints Warehousing in Liquidation, Inc.—on or about March 19, 1990. However, no dissolution, winding down or liquidation proceedings were undertaken.

In August 1990, the subtenant on the sublease of the Paterson Lease defaulted on its rental obligation, and rental payments to the landlord ceased. The landlord of the Paterson Lease made a demand on Continental for full payment on the obligations owed on the remainder of the lease, which Continental paid.

---

1. An additional defendant, Harvey C. Zorn ("Zorn"), the President of Allpoints, was sued but then consensually dismissed.

2. Through a series of corporate mergers, the entity presently asserting an interest in this proceeding is Continental Holdings, Inc.

On November 14, 1990, Continental brought suit against, among others, debtor, the Allpoints Defendants and the Quadrelle Defendants in the Superior Court of the State of New Jersey ("the New Jersey litigation"). The complaint in the New Jersey litigation alleged in the first count that Allpoints, WAAC and Place defaulted on the rent on the Paterson Lease and should be held liable "for any past, present and future damages suffered by Continental" as a result of such default. (D.I. 54, Ex. A) In the second count, Continental alleged:

> 10. Defendants Lang, Windell, Lichter, Bopp, Zorn, Allpoints Warehousing Co., Quadrelle, Realty Services ... acting individually, jointly or in concert, have manipulated the affairs of Allpoints, Warehouse and Place in such a manner as to leave one or more of them with insufficient capital to pay it or their just debts as they occur, thus rendering one or more of them insolvent.
>
> 11. The defendants mentioned in paragraph 10 above may have, have, or will cause or permit fraudulent transfers, conversion, and have breached the fiduciary duties owed to one or more of the group comprised of Allpoints, Warehouse and Place, and have otherwise breached their fiduciary duties owed to the creditors and guarantors, e.g., [Continental Holdings, Inc.,], of the group.

(D.I. 54, Ex. A)

In December 1990, the Wilentz firm was asked by Gerald Wendel to defend the lawsuit on behalf of Allpoints and the Allpoints Defendants. The Wilentz firm accepted the engagement and, over the course of the following year, succeeded in having the complaint dismissed as to the Allpoints Defendants for lack of personal jurisdiction. (D.I. 54, Exs. B, C, D) Continental continued its suit against Allpoints, which was served with process in April 1992, after the Allpoints Defendants had

been dismissed.[3] On March 21, 1994, judgment was entered in favor of Continental against Allpoints in the amount of $1,826,888.16.

On July 20, 1994, Continental commenced an involuntary Chapter 7 proceeding against debtor. Continental is the sole unpaid creditor of record in the bankruptcy proceeding. Plaintiff was appointed as Trustee on January 24, 1997. The Trustee was given the authority to retain as special counsel the same law firm that represented Continental in the New Jersey litigation. The instant litigation was commenced by plaintiff on December 4, 1998.

The complaint filed by plaintiff sets forth 12 counts against the Allpoints and Quadrelle Defendants. The complaint asserts that these defendants breached various duties by engaging in an alleged scheme to unlawfully render debtor insolvent by virtue of the 1990 Transactions in order to harm debtor's only creditor, Continental. The complaint, in count thirteen, alleges that the Wilentz firm violated its duty of loyalty, its implied duty of due care and its fiduciary duties to the debtor because the "firm's true loyalties were at all times to the defalcating principals, whom the Wilentz firm continued to represent despite the clear, material adversity of interest between the defalcating principals and the [debtor]." (D.I. 1)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct.

---

**3.** At this same time, the Allpoints Defendants were engaged in litigation against Continental in Florida. Continental, however, did not pursue its claims against these defendants in any forum until it sought debtor's involuntary bankruptcy.

828

1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Statute of Limitations

■ The Allpoints and Quadrelle Defendants assert that the lawsuit is barred by the applicable Delaware statute of limitations, 10 Del. C. § 8106, which provides for a three-year limitations period. More specifically, the moving defendants contend that all of plaintiff's claims accrued prior to July 20, 1991, three years prior to the petition date of July 20, 1994. 11 U.S.C. § 108(a). Plaintiff disagrees, arguing that defendants are not entitled to the protec-

tion of the statute of limitations as a matter of law, based upon the reasoning of the Delaware Supreme Court in *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808 (Del. 1944). The court concludes, however, that plaintiff's reliance on *Bovay* is misplaced and that the statute of limitations is applicable to the facts of this case.

At the outset, it is important to note that *Bovay* stands for the rather unremarkable proposition that a court in equity **"will follow the statute of limitations, unless unusual or extraordinary circumstances render its application inequitable in a particular case."** *Id.* at 814 (emphasis added). The Delaware Supreme Court went on to examine cases where the statute of limitations was held not to apply because of fraud and/or concealment on the part of the fiduciary defendants. Although it is not clear from the Supreme Court's opinion, the facts as described by the Court of Chancery indicate that "Bovay, though one of the complainants in the action, is merely acting in a representative capacity; and conceding that he knew all of the facts at a much earlier date, **his knowledge could not be imputed to creditors."** *Bovay v. H.M. Byllesby & Co.*, 22 A.2d 138, 143 (Del.Ch.1941) (emphasis added). Applying the principles therein stated to these facts, the Delaware Supreme Court found

that the bare plea of the statute of limitations without more, was wholly insufficient in law as a defense to the charges of the complaint .... The defendants[, however,] may be able to show that their conduct was not such as to deprive them of the protection of the statute. Accordingly, by proper pleadings, they may set up the bar of the statute in connection with such explanatory or exculpatory facts and circumstances as will serve to except them from the reach of the principles here stated.

*Bovay*, 38 A.2d at 821.

The next significant discussion of the issue at hand is in another Delaware Supreme Court decision, *Bokat v. Getty Oil*

*Co.*, 262 A.2d 246 (Del.1970). *Bokat* was a derivative action in which the plaintiff stockholder alleged unfair self-dealing on the part of the defendant successor corporation. Despite allegations of fraud and concealment, the Delaware Supreme Court distinguished *Bovay* on its facts and held that the three-year statute of limitations began to run against the plaintiff when she knew or had reason to know the facts alleged to give rise to the wrong. *See, id.* at 251.

The Court of Chancery of the State of Delaware continues to follow this reasoning. In *Kahn v. Seaboard Corp.*, 625 A.2d 269 (Del.Ch.1993), then Chancellor Allen analyzed the history of the application of the statute of limitations where a fiduciary is charged with wrongful self-dealing. He recognized that such circumstances as fraudulent concealment and fraud may toll the running of the statute. Nevertheless, he went on to ratify "the soundness of the principle that the statute of limitations applies, but is tolled in derivative actions charging actionable self-dealing, **until the shareholders knew or had reason to know of the facts constituting the alleged wrong.**" *Id.* at 276 (emphasis added).

There is no Delaware case law to the contrary. *See, e.g., Boeing Co. v. Shrontz*, No. 11273, 1992 WL 81228, at *2–3 (Del. Ch. April 20, 1992); *In re Maxxam*, No.

12111, 1995 Del. Ch. LEXIS 73, at *19029 (Del. Ch. June 21, 1995); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, No. 13389, 1996 WL 506906, at *15–17 (Del.Ch. Sept.3, 1996); *Wilmington Trust Co. v. Price*, 692 A.2d 416, 1997 WL 80069, at *1 (Del.1997).

Applying the above principles to the undisputed facts of record, it is clear that **all** parties in interest, including but not limited to the debtor, Continental, and the Allpoints and Quadrelle Defendants, knew or should have known about the facts constituting the alleged wrongs no later than November 14, 1990, when Continental brought suit in New Jersey against the debtor and the Allpoints and Quadrelle Defendants, alleging wrongs based upon the same facts, that is, the 1990 Transactions.[4] Because the complaint at bar is premised on the 1990 Transactions and every party knew about said transactions[5] more than three years before the petition date, plaintiff's suit is barred by the three-year statute of limitations of 10 Del. C. § 8106. Therefore, the motions for summary judgment filed by the Allpoints and Quadrelle Defendants shall be granted.[6]

**B. Legal Malpractice**

█ A cause of action under Delaware law for attorney malpractice requires three elements: 1) employment of the at-

4. Although plaintiff at bar knows more about the 1990 Transactions in this proceeding than Continental did when it filed the New Jersey litigation in November 1990, nevertheless, Continental's knowledge in November 1990 was legally sufficient to allege fraud against these defendants and, therefore, must be deemed sufficient for statute of limitations purposes.

5. Unlike the facts in *Bovay*, where at least the creditors of the estate were without knowledge.

6. The court notes in this regard that if the statute of limitations were held not to apply, the court would instead apply the equitable doctrine of laches. Given the equities of this case, the court would not allow the case to proceed. Specifically, Continental, the sole

creditor of debtor's estate, is the party that brought suit against the debtor, obtained a judgment against the debtor, and instituted involuntary bankruptcy proceedings against the debtor, all in order to collect on its judgment by bringing suit against the defendants at bar, defendants who had been sued but who were not pursued to judgment by Continental back in 1990. If this indeed is a situation where equity should rule the day, the equities indicate to this judicial officer that the instant lawsuit is an abuse of the bankruptcy system and should not be permitted to proceed more than a decade after the transactions in dispute occurred. While respectful of the corporate entity, it is, after all, a legal fiction which cannot be used to give renewed life to the stale rights of third parties.

torney; 2) that attorney's neglect of a reasonable duty; and 3) such negligence proximately causes loss to the client. *See, David B. Lilly Company, Inc. v. Fisher,* 18 F.3d 1112, 1120 (3d Cir.1994). According to plaintiff, New Jersey law is not in conflict on this point. *See, St. Pius X House of Retreats v. Diocese of Camden,* 88 N.J. 571, 443 A.2d 1052, 1061 (1982).

Plaintiff at bar asserts that the Wilentz firm committed legal malpractice based upon the following "scenario":

> Allpoints, through Lang, Lichter and Wendel, engages Wilentz in connection with the New Jersey litigation. **Wilentz is paid with funds stolen from Allpoints by the insiders.** Upon consultation with its clients, and review of applicable facts and law, Wilentz concludes that: 1) Allpoints has no valid defense to [Continental's] claim; **2) the insiders have looted the corporation of all of its assets; 3) Allpoints is insolvent; 4) [Continental] has valid claims against the insiders for their looting; 5) [Continental] can place Allpoints into bankruptcy and, thereafter, the Trustee can pursue claims against the insiders.**
>
> Having reached these conclusions, Wilentz had an ethical obligation to forcefully present this information to the Board of Allpoints, that is, to Lang, Lichter and Wendel, and attempt to persuade them to change course. **Since all the assets looted from Allpoints or the proceeds of those assets remained under the control of Lichter and Wendel,** they could easily have returned Allpoints to the *status quo ante.* At that point, Allpoints would have paid its landlord in New Jersey as much as it could, given its financial ability. Lang, Lichter and Wendel would have had no personal liability whatsoever to the landlord or to [Continental]. Years of litigation in the New Jersey courts and in this court would have been avoided, at enormous

savings to Allpoints and Lang, Lichter and Wendel.

(D.I. 66 at 18–19) (emphasis added).

Clearly plaintiff's malpractice claim is based upon the allegations of wrongdoing asserted against the Allpoints Defendants, allegations which were not addressed by the New Jersey courts and which are barred in this litigation by the statute of limitations. The question for the court is whether the Wilentz firm should be held accountable under these circumstances. The court concludes that it should not.

■ The Delaware Supreme Court, in *Thompson v. D'Angelo,* 320 A.2d 729, 734 (Del.1974), has declared it to be "the law that a malpractice action against an attorney cannot be established in the absence of a showing that his wrongful conduct has deprived his client of something to which he would otherwise have been entitled" (citing *Pusey v. Reed,* 258 A.2d 460 (Del.Super.1969)). In *Pusey,* the court explained that

> a client claiming that his attorney was negligent in connection with litigation has the burden of proving that damages resulted, this burden involving, usually, the difficult task of demonstrating that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question.

*Id.* at 461. Thus, for instance, a plaintiff is entitled to recover on a legal malpractice claim "only if he would have won the underlying medical malpractice claim." *Kennedy v. Twer,* 1986 WL 9032, at *1 (Del.Super. Aug. 5, 1986).

■ Plaintiff trustee does not have a justiciable cause of action against the Allpoints Defendants based upon their alleged wrongdoing in 1990. Therefore, plaintiff cannot demonstrate that, "but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question." *Pusey,* 258 A.2d at 461. The motion for

summary judgment filed by the Wilentz firm, therefore, shall be granted.

## V. CONCLUSION

For the reasons stated, the motions for summary judgment filed by the defendants shall be granted. An appropriate order shall issue.